**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Jasiel Corral-Cinco,<br><br>    Defendant. | No. CR 15-2312-TUC-CKJ (LAB)<br><br>**ORDER** |

On September 6, 2016, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation (Doc. 51) in which she recommended that the Motion to Suppress (Doc. 25) filed by Jasiel Corral-Cinco ("Corral-Cinco") be denied. Corral-Cinco has filed an objection (Doc. 55) and the government has filed a response (Doc. 56).

On October 28, 2016, this Court heard additional testimony and argument regarding the surveillance videos (Ex. 8). During the hearing, Corral-Cinco requested this matter be remanded to the magistrate judge for further review in light of the additional evidence.

The Court has reviewed the Motion to Suppress (Doc. 25), the response (Doc. 30), the Report and Recommendation ("R & R") (Doc. 51), the exhibits, the Notice of Disclosure (Doc. 38), the Notice – Video Footage Timestamps (Doc. 40), the Defendant's Notice of Video Footage Time Stamps and Authority (Doc. 47), the transcripts of the hearing held before the magistrate judge (Docs. 48, 49, 50), the objections (Doc. 55), the response (Doc. 56), and the additional evidence and argument presented to this Court. The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon

1  whether a party files objections – the Court need not review portions of a report to which a
2  party does not object. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472-73, 88 L.Ed.2d
3  435 (1985). However, the Court must "determine de novo any part of the magistrate judge's
4  disposition that has been properly objected to. The district judge may accept, reject, or
5  modify the recommended disposition; receive further evidence; or return the matter to the
6  magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 288 U.S.C. § 636(b)(1)
7  ("A judge of the court shall make a de novo determination of those portions of the report or
8  specified proposed findings or recommendations to which objection is made.").

*Report and Recommendation – Factual Background*

While Corral-Cinco has objected to conclusions reached by the magistrate judge, no specific objection has been made to the magistrate judge's summary of evidence. The Court, therefore, adopts those findings. Additionally, the magistrate judge stated:

> Government's Exhibit 8 consists of two DVDs which the Court reviewed in chambers after the hearing. The DVDs have limited value due to the grainy quality of the images. No testimony was presented to explain what the DVDs depict. The Court was unable to identify specific people and had difficulty identifying locations and specific vehicles.

R & R, p. 2, n. 1. While the Court agrees it is unable to identify specific people, the Court did make some relevant observations.

At approximately 8:27:30 a.m., Camera 1 shows two persons walking. It does not adequately show whether the person looked toward the intersection of Tangent Range Road and Industrial Park Avenue. It appears that one person may have made a half-body turn to look towards the intersection area, but the Court does not place any significance on this observation because it could simply be a matter of fluctuations in the pixelation. The videos do not show the view the agents may have had of the intersection of Tangent Range Road from the side of the daycare center or from the back lots. A review of Ex. 4 indicates a line of sight between the side of the daycare center and some area in the back/side lots and the intersection of Tangent Range Road and Industrial Park Avenue, depending on the foliage. Camera 4 shows part of Tangent Range Road can be seen through the foliage. While the

- 2 -

1 | Court does not find this establishes that the agents saw Corral-Cinco and Gabriel Antonio
2 | Quijada-Quijada ("Quijada-Quijada") walking south on Tangent Range Road, the Court finds
3 | it does establish that the agents may have been able to see them turning onto or walking on
4 | this road.

5 | At 8:37:32 a.m., Camera 1 shows two persons exited the first Border Patrol vehicle.
6 | One person exited from the front driver's side door and the other person exited from the front
7 | passenger's side door. The two persons moved freely about and neither person appeared to
8 | restrict the other's movements. This vehicle was subsequently moved and the Court did not
9 | observe any other persons exiting from this vehicle. Moreover, the videos do not appear to
10 | show any person, other than a driver when it was moved, get into this vehicle. While the
11 | Court does not find this establishes Quijada-Quijada was not in this vehicle, Quijada-Quijada
12 | was not removed from this vehicle, or Corral-Cinco was not told to get into this vehicle as
13 | stated in Corral-Cinco's testimony, the Court considers this along with other evidence.

14 | The Court agrees with Corral-Cinco that, at 8:51:31 a.m., Camera 1 shows a person
15 | appears to open the rear driver's side door of the Border Patrol vehicle with its lights
16 | flashing. However, the Court cannot tell if at that time, or any other time, the rear
17 | passenger's side door is opened. The Court does not find this conclusive, but considers the
18 | video footage does not definitively establish whether a second person was in the rear seat of
19 | the Border Patrol vehicle with its lights flashing. Specifically, as to Border Patrol Agent
20 | Samuel Schultz's testimony that he separated the men by placing Quijada-Quijada in another
21 | marked vehicle after arriving at the back lot, the videos do not confirm or dispute this
22 | statement.

23 | The Court's review of the relevant time portions of the videos does not show any other
24 | two persons that agents could have reasonably concluded were not the subjects of the
25 | reported tip (e.g., single person in the back area, apparent parent or guardian accompanying
26 | child into the daycare). While the Court does not find this establishes Corral-Cinco and
27 | Quijada-Quijada triggered the earlier sensor activity in the area or were the persons
28 |

1 referenced to in the report from the dispatcher, the Court considers this along with other
2 evidence.

*Objections to the Report and Recommendation*

Corral-Cinco objects to the magistrate judge's conclusion as to the first encounter because, he argues, the agents had neither reasonable suspicion nor probable cause for the first encounter with Corral-Cinco and Quijada-Quijada. Objections (Doc. 55), p. 4. Corral-Cinco also objects to the magistrate judge's conclusion as to the second encounter because, he again argues, the agents had neither reasonable suspicion nor probable cause for the second encounter with Corral-Cinco and Quijada-Quijada. Objections (Doc. 55), p. 4.

*Credibility Determinations*

The magistrate judge concluded Border Patrol Agent Justin Sander's characterization that Corral-Cinco and Quijada-Quijada were trying to hide was "not entirely credible based on the agents' testimony that the men were taller than the pillar and were looking at the agents. The court concludes that the men were simply trying to make themselves look less conspicuous." R & R (Doc. 51), p. 3. The magistrate judge also stated:

> [Corral-Cinco's] testimony about being asked to remove all belongings and being searched during the first encounter is not credible. A search would have revealed the key in Mr. Corral-Cinco's pocket. It is not credible that Corral-Cinco forgot about the key which he likely knew was linked to a truck involved in criminal activity. Corral-Cinco testified he had no plan to drive the truck, but he received the key before entering the United States. He testified that he spoke with a woman about work, but his possession of the key indicates that he was not in the United States seeking legitimate work.

*Id*. at 8. The magistrate judge also stated, as to Corral-Cinco's testimony:

> The men walked for about five minutes when the USBP car made a u-turn and stopped next to them. The agent got out of the vehicle, told the men to sit on the ground and handcuffed them once they were on the ground. That testimony is not credible in light of Agent Schultz's testimony that he removed Corral-Cinco from the car so he could handcuff him from behind as he stood facing the vehicle, once they arrived back at the warehouse.

*Id*. at 9.

- 4 -

The Court agrees with these credibility determinations. This conclusion is supported not only by the evidence as summarized by the magistrate judge, but also the observations this Court made from the videos.

Additionally, the magistrate judge summarized a portion of Corral-Cinco's testimony as follows:

> Corral-Cinco testified that another car arrived and two or three more agents arrived on foot. Corral-Cinco was told to get up and get in the first agent's car. His friend was told to get into another car. The men were driven to an area where there were several cars and officers waiting near a white truck with marijuana bundles. Corral-Cinco was left in the car. The agents walked around and then returned and told Corral-Cinco to get out of the car. He was still in handcuffs. They searched him again and took the key, which was given to another agent who used it to start the truck. The agents removed all his other belongings, threw them on the ground and placed Corral-Cinco back in the Tahoe. They read him his rights, which he understood.
>
> Corral-Cinco denies being questioned or making any statements. He doesn't remember being asked if he had the key to the truck or if he knew about the truck . . .

*Id.* at 9. The Court does not find this testimony to be credible. In addition to the conclusion Corral-Cinco's testimony is not credible regarding the agents simply not finding the key during an alleged initial search, the slim inferences that can be gleaned from the videos lead to a conclusion that Corral-Cinco's testimony as to being handcuffed prior to transport and being transported separately from Quijada-Quijada is not credible.

*Reasonable Suspicion for Initial Encounter*

The magistrate judge concluded the initial encounter is properly characterized as an initial inquiry and a brief investigatory detention and found the agents had reasonable suspicion to justify this initial detention. The magistrate judge stated:

> USBP Agents Sanders and Schultz were investigating a report of individuals hiding in the brush near a preschool, less than a mile from the border, in an area known for drug and human trafficking. They were told that there was sensor activity in that area. They responded and found the defendant and his companion, who walked away when the agents arrived. No one else was in the area near the warehouse.
>
> The agents told the men to stop. They questioned the men, who provided answers that the agents found suspicious. The defendant's companion was fidgety and nervous. The agents took their immigration documents, holding them until the men were free to leave. Prior to being told they were free to leave, a reasonable person would not

- 5 -

feel free "to disregard the police and go about his business." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). The encounter was not voluntary. It was a brief, investigatory detention based on reasonable suspicion. The initial stop was lawful.

R & R (Doc. 51), p. 10.

Corral-Cinco states:

> If the District Judge looks at Government's Exhibit 8 and Government's Exhibit 1 it will be clearly seen the area where the Defendant was first seen is not near any brush nor is near any daycare. Nor is there any report from law enforcement that the Defendant wore clothing that would indicate or be evidence that he was hiding in brush. Undersigned counsel on cross asked one or both of the agents if they had seen the Hispanic Defendant or his companion with clothes indicating that either of them had been in brush (such as stickers, thorns, etc.) and one or both stated no and/or they didn't recall.

Objections (Doc. 55), p. 5. The Court disagrees with Corral-Cinco's characterization. Corral-Cinco and Quijada-Quijada were initially seen by the agents "near" the daycare center. Similarly, whether a person reporting seeing people hiding in "brush" is referring to a certain type of vegetation cannot be ascertained; moreover, such a report could have been referring to a nearby area with different types of vegetation. The agents saw two men, with no indication any other two persons or group of people were seen by the agents, close to a daycare center that had reported people hiding in the brush nearby. Indeed, Agent Schultz testified they were the only people in the area.

Furthermore, this occurred in an area known for drug and human trafficking and there had been sensor activity in the area earlier. Additionally, Corral-Cinco and Quijada-Quijada were attempting to make themselves appear less conspicuous, causing the agents to speculate they were trying to hide.

The Court agrees with the magistrate judge that the agents had reasonable suspicion to conduct a brief, investigatory stop of Corral-Cinco and Quijada-Quijada.[1]

---

[1] "Since [the Court agrees with the magistrate judge] and conclude[s] that the stop was supported by reasonable suspicion, [the Court] need not decide in the first instance whether [Corral-Cinco's] encounter with the Border Patrol agent[s] constituted a seizure implicating the Fourth Amendment." *United States v. Rodriguez*, 464 F. App'x 677, 678 (9th Cir. 2012); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983) (police may approach a person in a public place and inquire as to his or her willingness to answer questions).

*Reasonable Suspicion for Second Encounter and Probable Cause for the Arrest*

The magistrate judge concluded the second encounter was a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and was supported by reasonable suspicion with the encounter culminating in an arrest supported by probable cause. The magistrate judge stated:

> In the present case, the defendant was stopped on the side of the road, walking south toward the border. Agent Schultz told him and his companion that he had a few more questions because they found something. He asked the men to get into the back seat of the Tahoe. The men complied. They were not handcuffed. They got into the locked, caged area together. They were transported for 30 seconds. A reasonable, innocent person would believe he was going to be questioned briefly about whatever the agents found in the area where the first encounter took place, and would then be free to leave, as had just occurred minutes earlier. The intrusiveness of the stop, the first prong, favors a finding that the defendant was not under arrest at that time.
>
> Agent Schultz did not testify that he was in fear for his safety when he re-contacted the two men. He called for backup as he approached the men, presumably because there were two of them and only one agent. Multiple agents arrived at his location once the men were secured in the back of the Border Patrol vehicle. The reason Agent Schultz decided to secure and transport the men was because of the proximity to the border. He did not want the men to run across the border. The second prong is neutral.
>
> The analysis then turns to whether probable cause was developed between the first encounter and the arrest. Once the defendant admitted that he was not in the area looking for work, and that he had the key to the marijuana-laden truck, there was probable cause to arrest him. Agent Sanders discovered the white pick-up truck loaded with marijuana about 100 to 200 feet, and a one minute walk, from where the defendant and his companion were originally encountered.
>
> Based on the totality of the circumstances, a reasonably cautious person could conclude that there is a fair probability that Defendant Corral-Cinco committed a crime.

R & R (Doc. 51), pp. 11-12.

Corral-Cinco asserts, however, even if the agents' version of events occurred, the first prong favors a finding he was under arrest before or during the transport and that agents did not have probable cause to arrest Corral-Cinco. As previously stated, the Court agrees with the magistrate judge's credibility determinations and has made further credibility determinations; in other words, the Court finds the agents to be credible. Nonetheless, Corral-Cinco points out that agents were swarming the area, he was not asked for permission to be transported, and there was nothing to indicate where he was being taken, how long he was being transported nor what was happening to him. Further, Corral-Cinco also argues

1 Agent Schultz is not credible because during the July 25, 2016, hearing before the magistrate
2 judge, his testimony made the second contact with Corral-Cinco sound consensual compared
3 to his testimony during the hearing before this Court where Agent Schultz testified he
4 believed he turned the overhead flashing lights on when he made contact with Corral-Cinco
5 and Quijada-Quijada prior to transporting them.  The Court, however, does not find this
6 testimony to be inconsistent; indeed Agent Schultz was not asked before the magistrate judge
7 if the vehicle's flashing lights were on.

8 Further, in determining whether reasonable suspicion existed for the second
9 encounter, the Court considers Agent Schultz testified that Corral-Cinco and Quijada-
10 Quijada were separated when they returned to the area behind the daycare center.  Agent
11 Schultz also testified he read Corral-Cinco his *Miranda* rights and asked him some questions.
12 Corral-Cinco admitted he knew marijuana was in the truck and that he came from Mexico
13 to transport the marijuana.  Agent Schultz then handcuffed Corral-Cinco, searched him, and
14 found the key to the truck; Agent Sanders testified Corral-Cinco took a key out of his pocket
15 and give it to Agent Schultz.[2]  Agent Sanders started the truck with the key from Corral-
16 Cinco.

17 Here, the agents' observations were grounded in objectively identifiable facts, and the
18 totality of the circumstances of the second encounter make clear that the agents had
19 reasonable suspicion to stop Corral-Cinco and Quijada-Quijada for further investigation.
20 They were found in an area frequented by drug and human traffickers and in which a truck
21 loaded with marijuana was found, were possibly the persons that had been reported as hiding
22 in the brush, had acted nervously and evasively, had stated they were looking for work
23 although the B1/B2 visas they possessed did not permit the holders to work in the United
24 States, and had headed in the direction of the border.  The Court agrees with the magistrate

---

[2]The Court does not find this discrepancy in the agents' testimony to materially affect their credibility. The Court finds the testimony of Agent Schultz that Corral-Cinco admitted he knew marijuana was in the truck and that he came form Mexico to transport the marijuana to be credible.

- 8 -

judge that Corral-Cinco and Quijada-Quijada posed a risk for flight, justifying the arrival of additional agents without converting the initial part of the second encounter into an arrest.

Further, once Corral-Cinco admitted he had lied about looking for work, knew there was marijuana in the truck, had come from Mexico to transport the marijuana, and stated he had the key to the truck in his pocket, the agents had probably cause to arrest Corral-Cinco.

*Conclusion*

The agents had reasonable suspicion to conduct a brief, investigatory stop of Corral-Cinco and Quijada-Quijada during the initial encounter.  Further, the second encounter was not converted into an arrest by the transportation of Corral-Cinco and Quijada-Quijada. Upon further investigation, the agents developed probable cause to arrest Corral-Cinco and Quijada-Quijada.  The agents having lawfully stopped Corral-Cinco and Quijada-Quijada, any evidence seized from the lawful encounters is admissible.

Accordingly, after an independent review, IT IS ORDERED:

1. The October 28, 2016, oral request to remand this matter to the magistrate judge for further review in light of the additional evidence is DENIED.
2. The Report and Recommendation (Doc. 51) is ADOPTED.
3. The Motion to Suppress (Doc. 25) is DENIED.

DATED this 31st day of October, 2016.

_____
Cindy K. Jorgenson
United States District Judge